IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOYCE LEE JORDAN,
      Plaintiff,

vs.                                 Case No.: 3:14cv596/MCR/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## I.     PROCEDURAL HISTORY

On June 25, 2010, Plaintiff filed her application for DIB, and she alleged disability beginning June 20, 2010 (Tr. 21).[1]  Her application was denied initially and on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ").  A hearing was held on January 29, 2013, and on March 8, 2013, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (Tr. 21–34).  On August 28, 2014, the Appeals Council denied Plaintiff's request for review (Tr. 1–4).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

## II.    FINDINGS OF THE ALJ

On March 8, 2013, the ALJ made several findings relative to the issues raised in this appeal (Tr. 21–34):

1)    Plaintiff meets the insured status requirements of the Act through December 31, 2014;

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on April 14, 2015 (ECF No. 5).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

2)     Plaintiff has not engaged in substantial gainful activity since June 20, 2010, the alleged onset date;

3)     Plaintiff has the following severe impairments: coronary artery disease; peripheral vascular disease; hypertension; and major depressive disorder;

4)     Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

5)     After careful consideration of the entire record, the ALJ finds that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that Plaintiff can lift and carry 10 pounds frequently and 20 pounds occasionally. Plaintiff can sit for 6 hours in an 8-hour workday and stand or walk for 6 hours in an 8-hour workday. Plaintiff can frequently push or pull leg controls and can occasionally push or pull arm controls. Plaintiff cannot perform overhead work. Plaintiff can frequently finger, handle, and feel. Plaintiff cannot work at unprotected heights. Plaintiff cannot operate dangerous machinery or automotive equipment. Plaintiff cannot climb ladders, ropes, or scaffolding. Plaintiff can occasionally crawl. Plaintiff can frequently balance, stoop, kneel, crouch, and climb ramps and stairs. Plaintiff cannot tolerate concentrated exposure of 5 minutes or more to temperature extremes, i.e., the heat of a blowtorch or the cold of a freezer. Plaintiff can perform simple, routine, repetitive tasks. Plaintiff can occasionally interact with the public, supervisors, and coworkers. Plaintiff can occasionally adapt to changes in the work setting. Plaintiff can maintain concentration and attention for 2 hours at a time;

6)     Plaintiff is unable to perform any past relevant work;

7)     Plaintiff was born on April 22, 1961, and was 49 years old, which is defined as a younger individual aged 18–49, on the alleged disability onset date. Plaintiff subsequently changed age category to closely approaching advanced age;

8)      Plaintiff has at least a high school education and is able to communicate in English;

9)      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills;

10)     Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform;

11)     Plaintiff has not been under a disability, as defined in the Act, from June 20, 2010, through the date of the decision.

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd.,

921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant

is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, she is not disabled.

2.    If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.    If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.    Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's

impairments, the claimant can perform.  <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL AND MEDICAL HISTORY

A.    Personal History

At her January 29, 2013, hearing, Plaintiff testified that, following surgery in March of 2011 to relieve arterial blockage in her left arm and neck area, and then experiencing similar blockage issues in her right arm, she has had lingering problems using her arms even for tasks such as picking up a cup of coffee (Tr. 47–48).  She provided that she has "tingling" in both arms, that sometimes the muscles in her arms "tighten[] up," and that she has to turn her neck slowly to keep it from "locking up" (Tr. 48, 51).  Plaintiff stated she has great difficultly raising her arms above her head (Tr. 53–54).

Plaintiff further described her difficulty with chest pains, for which she always keeps nitroglycerine nearby (Tr. 48).  She stated that when she gets anxious her chest pains increase, and that lifting, carrying, pushing and pulling can also cause chest pain (Tr. 52, 54).  Plaintiff further stated that walking to the mailbox leaves her short of breath, where she needs to rest for 15 to 20 minutes (Tr. 52–53).

B.      Relevant Medical History[2]

Plaintiff's alleged onset date, June 20, 2010, coincides with her admission to the emergency room at Sacred Heart Hospital because of chest pains (Tr. 369–405). After testing determined that she had a "significant area of stenosis in the right coronary artery requiring intervention," a heart catheterization was performed, and two stents were placed in her right coronary artery (Tr. 380).  She was discharged two days later after her chest pain and pressure symptoms had subsided.  At a July 26, 2010, follow-up office visit, Plaintiff reported that she was experiencing dyspnea "with as little as walking 15 feet" (Tr. 408).  Because she stated she had not taken her prescribed nitroglycerin during these episodes, she was instructed to do so to determine if that would alleviate the problem (*id*.).

On August 6, 2010, an outpatient cardiac catheterization was performed (Tr. 424–29).  The results indicated that Plaintiff's left ventricle had "excellent left ventricular systolic function and an ejection fraction of 70%" (Tr. 428).  There was no mitral regurgitation (*id*).  Her right coronary artery was seen as an "excellent result

_____

[2]  It should be noted that there are medical records contained in the file pertaining to the last of Plaintiff's severe impairments, depression.  The records show that Plaintiff's symptoms of depression were generally moderate in nature and had improved with treatment—and the ALJ noted as much in her ruling (Tr. 28–29).  More importantly, Plaintiff's depressive disorder received no attention in Plaintiff's brief.  Consequently, the records regarding Plaintiff's depression are generally excluded from the court's summary of Plaintiff's medical records.

from two bare metal stents" (*id*). There was a 50% irregularity in the right
posterolateral branch (*id*). Plaintiff's left coronary artery was determined to have
"30% stenosis and 30% irregularities in the left anterior descending beyond the
diagonal branches" (*id*). Because Plaintiff's physician thought "her problems with
paroxysmal shortness of breath [were] related to paroxysmal accelerations in her
blood pressure," he advised her to check her blood pressure during episodes of stress
(*id*). At an August 26, 2010, follow-up visit, Plaintiff denied having chest pains or
dyspnea, although she did report that her blood pressure was notably higher when
using her right arm to measure as opposed to her left (Tr. 418).

On September 10, 2010, Plaintiff's cardiologist, Edwin W. Rogers, M.D.,
completed a Treating Source Cardiac Questionnaire (Tr. 430–34). This was a "fill-in-
the-blanks" questionnaire form in which Dr. Rogers was asked to mark any physical
limitations with standing, walking, sitting, lifting or carrying that Plaintiff might have
as related to her cardiac condition (Tr. 431). Dr. Rogers did not mark any such
limitations (*id*). The form also asked if Plaintiff had any symptoms of angina as well
as silent ischemia, severe fatigue, malaise, palpitations or syncope, and again Dr.
Rogers marked no boxes on the form (*id*). He did, however, indicate in the space
provided that Plaintiff had dizziness related to hypertension (*id*).

During a September 22, 2010, meeting with Maria Hutchinson of Pensacola Area Disability Determinations, Plaintiff indicated that she was not experiencing chest pain or shortness of breath but that she was getting different readings of her blood pressure in both of her arms (Tr. 266).  Plaintiff also stated that she walks independently, can dress and bathe herself, can cook meals, attends church, is involved with a group called Daughters of Isis, and grocery shops but prefers it if her husband does the shopping because she does not like crowds (*id*).

Similarly, a November 22, 2010, Report of Contact form provides that Plaintiff can walk unassisted, pick up coins, button shirts, use two hands to lift and pour from a gallon jug of milk, and perform light cooking, cleaning, laundry and personal grooming (Tr. 275).  Plaintiff did report that twice per week after exerting herself she experiences pain in her chest lasting approximately twenty minutes (*id*).  She reported that the problem has been "better" since she received an increase in her blood pressure medication (*id*).  Her husband reported that Plaintiff rarely goes out to visit with others and is uncomfortable around crowds but that she goes to church and sees friends there (*id*).  He added that Plaintiff is looking forward to her daughter visiting over the holidays "and intends to share in the cooking" (*id*).  Her husband also stated that Plaintiff's "memory and ability to concentrate are intact" (*id*).

On a September 27, 2010, office visit with Dr. Rogers, Plaintiff stated she was having episodes of dizziness lasting several hours (Tr. 455).   There were no respiratory or cardiac symptoms in evidence, however (Tr. 456).  And on a December 28, 2010, office visit, Dr. Rogers, found Plaintiff's coronary atherosclerosis and her hypertension to be stable (Tr. 528).  Dr. Rogers noted that Plaintiff's hyperlipidemia and subclavian steal syndrome had worsened since her last visit, and for the latter he recommended that a vascular surgeon be consulted (*id*).

On January 18, 2011, a carotid duplex study was performed by Stuart A. Harlin, M.D., FACS.  The study showed that Plaintiff had diminished blood flow in the left vertebral artery and heavy plaque at the origin of the internal carotid artery (Tr. 496). A left arm duplex study determined that Plaintiff had pre-occlusive left subclavian stenosis (Tr. 497).

On March 7, 2011, Plaintiff underwent an elective left carotid-subclavian bypass surgery (Tr. 475).  Her circulation was improved by the following day and she was released with a follow-up appointment scheduled for two weeks after the operation (*id*).  During that follow-up appointment, on March 24, 2011, Plaintiff reported having no difficulties and said she felt well (Tr. 488).  Dr. Harlin described Plaintiff's left radial pulse as strong (*id*).

On April 1, 2011, Plaintiff underwent a stress test and myocardial perfusion imaging study (Tr. 540).  The ECG results of the stress test "did not demonstrate ischemic changes," and the "myocardial perfusion imaging was normal" (Tr. 541). Plaintiff did not have chest pain or other symptoms during the test (Tr. 540).

On April 12, 2011, Plaintiff underwent a left arm duplex study, which revealed no significant color or spectral changes and no problems with blood flow (Tr. 487).

On July 18, 2011, another carotid duplex study was performed by Dr. Harlin (Tr. 569).  It revealed "moderate chronic right internal carotid artery stenosis of approximately 50-60%," which was defined as "stable" (*id*).  Dr. Harlin also found "[m]ild nonhemodynamically significant left internal carotid artery plaque" (*id*).

On October 17, 2011, Dr. Harlin performed a sonographic evaluation of Plaintiff's upper arm, which showed the flows through the graft to be intact and biphasic (Tr. 568).

On February 3, 2012, Dr. Harlin performed another carotid duplex study which revealed moderate plaquing in the right carotid artery and the left internal carotid artery (Tr. 567).  Dr. Harlin again determined Plaintiff's right carotid artery stenosis to be at 50-60% (*id*).

On February 20, 2012, Plaintiff was seen by Dr. Rogers; she reported she was doing well and was not having chest pain, but was having "some shortness of breath

with activity along with some chest discomfort" (Tr. 572).  Examination revealed no

other abnormal symptoms (Tr. 573).  Dr. Rogers evaluated Plaintiff's hypertension as

benign and noted that her subclavian steal syndrome was being managed by Dr. Harlin

(*id*).

On March 1, 2012, Dr. Rogers completed a form titled "Medical Opinion Re:

Ability To Do Work- Related Activities (Physical)" on Plaintiff's behalf (Tr. 589).

Dr. Rogers indicated that Plaintiff could frequently lift and carry ten pounds; could

occasionally lift and carry twenty pounds; and could occasionally twist, stoop, crouch,

and climb stairs and ladders (Tr. 589–90).  He also provided that Plaintiff had no

limitations in her ability to sit, stand, or walk during an 8-hour day with normal breaks

or any limitations with reaching, fingering, pushing, pulling, handling or feeling (*id*).

On May 7, 2012, a consultative disability examination was provided by Michael

Kasabian, D.O. (*see* Tr. 591–601).  Dr. Kasabian reported that Plaintiff's lungs were

clear and that her heart rhythm was regular but noted possible ischemia (Tr. 591–92).

He also noted her slightly diminished pulse on the left side of her extremities (Tr.

592).  While he noted tenderness from scar tissue in her left neck area that might cause

some loss of motion for left cervical rotation (Tr. 591), he found no problems with

tendon reflex, grip, ambulation, and muscle strength in her extremities (Tr. 592).  On

a form titled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," Dr. Kasabian determined that Plaintiff could frequently lift and carry up to twenty pounds; could occasionally lift and carry 21 to 100 pounds; could sit, stand and walk for eight hours without interruption; and could continuously reach, handle, finger, feel, push, pull, climb stairs and ladders, balance, stoop, kneel, crouch and crawl (Tr. 596–99).

V.     DISCUSSION

Plaintiff first contends that the ALJ, in making her ruling, did not give sufficient consideration to Plaintiff's own testimony regarding her disabilities, specifically her "complaints of shortness of breath and of tightness and tingling in the arms" (ECF No. 7 at 6).

A social security claimant may establish that she has a disability through her own testimony regarding her pain or other subjective symptoms.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).  In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain or other symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptoms. Id.; see also Strickland v. Commissioner of Social Sec., 516 F. App'x 829,

831 (Fla. (11th Cir. 2013); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per

curiam) (stating that this "standard also applies to complaints of subjective conditions

other than pain").

Reversal is warranted if the ALJ's decision contains no evidence of the proper

application of the three-part standard.  *See* Holt, 921 F.2d at 1223.  The ALJ is not

required to recite the standard word for word, but instead, must make findings

reflecting that the standard was applied.  *See* Wilson v. Barnhart, 284 F.3d 1219,

1225–26 (11th Cir. 2002) (per curiam) (holding that the ALJ did not err where his

findings and discussion indicated that the three-part standard was applied and he cited

to 20 C.F.R. § 404.1529; also noting that § 404.1529 "contains the same language

regarding the subjective pain testimony that this court interpreted when initially

establishing its three-part standard.").

When medical signs and laboratory findings establish that a claimant has a

medically determinable impairment that could reasonably be expected to produce the

claimant's symptoms, the ALJ must evaluate the intensity and persistence of the

claimant's symptoms and the extent to which those symptoms limit the claimant's

capacity for work.  20 C.F.R. § 404.1529(c)(1); Social Security Ruling ("SSR")

96–7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).[3]  In so doing, the ALJ is to consider the objective medical evidence and other evidence provided by the claimant and her treating and non-treating sources concerning what may precipitate or aggravate her symptoms; what medications, treatment or methods are used to alleviate the symptoms; and how the symptoms affect the claimant's daily living.  20 C.F.R. § 404.1529(c)(3); *see also* Strickland, 516 F. App'x at 831–32.

The ALJ's credibility finding must be grounded in the evidence and contain specific reasons that are supported by the record evidence.  SSR 96–7p at 4.  The ALJ should compare the claimant's descriptions of her symptoms with all the other evidence, considering whether there are any inconsistencies or conflicts between those descriptions and the record.  Strickland, 516 F. App'x at 832 (citing 20 C.F.R. § 404.1529(c)(4)).  While "pain alone can be disabling, even when its existence is unsupported by objective evidence," Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995), the presence or absence of evidence to support symptoms of the severity claimed is nevertheless a factor to be considered.  Marbury v. Sullivan, 957 F.2d 837, 839–40 (11th Cir. 1992); Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

---

[3] Pursuant to SSR 96-7p, a claimant's credibility determination must include consideration of the entire case record, objective medical evidence, the individual's own statements about symptoms, statements provided by treating or examining physicians or psychologists, and other persons about the symptoms and how they affect the claimant, and any other relevant evidence in the case record.  *See* SSR 96–7p, 1996 WL 374186, at *4.

"If the ALJ decides not to credit the claimant's testimony as to her subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding." Strickland, 516 F. App'x at 832 (citing Foote, 67 F.3d at 1561–62).  "While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for us to conclude that the ALJ considered the claimant's medical condition as a whole." *Id.* (citing Foote, 67 F.3d at 1562); *see also* Tieniber, 720 F.2d at 1255 ("[W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.").  Failure in this regard requires, as a matter of law, that the subjective testimony in question be accepted as true.  Foote, 67 F.3d at 1562 (citing Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir.1988)).

As it pertains to Plaintiff's testimony, the ALJ wrote:

At the hearing, the claimant testified that she has problems with her arms, the left worse than the right, including tingling and difficulties picking things up such as a cup of coffee.  The claimant also testified that she continues to experience chest pain as well as pain in her neck, making it difficult to turn her neck and reach.  According to the claimant, she gets tired and short of breath walking to the mailbox, a distance of approximately 10 feet, and she can only lift five pounds.

(Tr. 26).

The ALJ also noted:

In activities of daily living, the claimant has mild restriction. The claimant is generally able to perform activities of daily living within her reported physical limitations. She is able to walk independently, dress and bathe herself, take care of her own personal grooming, cook, do light cleaning, and small loads of laundry. The claimant can shop for groceries but she prefers for her husband to shop because she does not like crowds. She enjoys reading. The claimant is able to use the computer (she reported an email address on the Function Report). According to the claimant's husband, the claimant enjoys reading and watching television. In social functioning, the claimant has mild difficulties. The claimant lives with her husband. She attends church weekly and is involved with the Daughters of Isis. She visits with a friend and talks to two of her sisters on the telephone. According to the claimant's husband, the claimant occasionally has visitors but she rarely goes out to visit anyone. She regularly attends church and enjoys seeing her friends at church although prefers to stay by herself and is uncomfortable around crowds.

(Tr. 24) (citations to record omitted).

The ALJ then provided the following conclusions:

As for the claimant's subjective complaints of chest pain, neck pain, difficulties using her arms and picking things up such as a cup of coffee, difficulties reaching, shortness of breath, fatigue, dizziness, and other symptoms related to her coronary artery disease, peripheral vascular disease, and hypertension, the claimant's allegations are not fully credible. Dr. Rogers and Dr. Harlin's treatment records show that the claimant's coronary artery disease, subclavian steal syndrome and hypertension are generally stable. At her most recent appointment with Dr. Rogers in February 2012, he continued the claimant on the same medical therapy and did not recommend further treatment for one year. The claimant denied any medication side effects. There is no evidence

in the record that the claimant has required treatment prior to her next scheduled appointment with Dr. Rogers or that the claimant sought emergency room treatment since February 2012.  There is also no evidence in the record that the claimant sought treatment from Dr. Harlin or any other physician since February 2012.

(Tr. 29) (citations to record omitted).

Contrary to Plaintiff's assertion, the court finds the ALJ to have thoroughly considered Plaintiff's testimony regarding her impairments, and, after reviewing the medical evidence in the file which decidedly points away from a conclusion of disability, appropriately evaluated them in arriving at her decision.  Plaintiff attempts to bolster her argument by citing to the diagnoses relating to her cardiac condition, but as Defendant points out, diagnoses alone are insufficient to establish a disability.  The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); see also Russell v. Astrue, 331 F. App'x 678, 681 (11th Cir. 2009) (rejecting claim where plaintiff asserted that her high blood pressure caused her to be disabled but failed to point to any documentation in her medical records demonstrating how it might so cause disability); Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (holding that "[t]o a large extent, [the plaintiff] questions the ALJ's RFC determination based solely on the fact that she has varus leg instability and shoulder

separation.  However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.")

As the ALJ pointed out, Plaintiff's symptoms, cardiac and otherwise, were generally reported as mild during the entire period of disability or were otherwise brought under control with medication.  Moreover, while discounting the credibility of Plaintiff's subjective symptoms, the ALJ nevertheless accounted for Plaintiff's impairments by assessing her RFC at the light work level with the further limitations that the ALJ defined.

Next, Plaintiff argues that the ALJ did not sufficiently evaluate her subjective descriptions of her impairments in light of medical records between June 2010 and February 2012.  In other words, Plaintiff contends that the ALJ focused largely on medical records "from 2012 forward" (ECF No. 7 at 9).  This argument seems to derive from the fact that the ALJ, in drawing her conclusions as quoted *supra*, made particular mention of the relative lack of medical information in the file after 2012.  However, the court finds that the ALJ simply saw fit to comment on the lack of medical treatment information to simply demonstrate that this latter portion of the disability timeline was not being overlooked—and that indeed the lack of medical

evidence from that period itself stands as evidence that Plaintiff was suffering under no severe impairment such that it would compel her to seek medical intervention.

In any event, the court also finds there is little to go on as far as medical information during this latter period that would indicate that Plaintiff's impairments were any more severe or disabling than what was documented earlier during the timeline. It is Plaintiff's burden to provide specific medical information that the ALJ overlooked that would have influenced her conclusions. Plaintiff wholly fails to meet this burden.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that:

That the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

**DONE AND ORDERED** this <u>3</u><sup>rd</sup> day of February 2016.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

Case No.: 3:14cv596/MCR/EMT